*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JOHN IRA CARLSON,

      Defendant-Appellant.

UNPUBLISHED
October 01, 2024
11:09 AM

No. 363759
Berrien Circuit Court
LC No. 2021-003779-FH

Before: GADOLA, C.J., and K. F. KELLY and MARIANI, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial conviction of receiving and concealing stolen property. The trial court sentenced defendant as a fourth-offense habitual offender to serve 46 to 420 months' imprisonment. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case stems from defendant's activity of stealing and selling radiators and copper material from the Orchards Mall in Benton Harbor, Michigan. Over two days in 2021, defendant, with the help of his girlfriend, Sarah Collier, and friend, Nathan Pelletier, sold several large radiators and copper material to a recycling center for $1,150. On a third day in 2021, defendant and Pelletier once again attempted to collect a large radiator from outside of the Orchards Mall, but were interrupted. The pair fled the scene, and Pelletier was later apprehended while he was attempting to return the U-Haul truck they used to transport the radiators. Defendant was arrested several days later.

At trial, defendant admitted that he brought the radiators and copper material to the recycling center, but he denied knowledge that the property was stolen. The jury found defendant guilty of receiving and concealing stolen property, MCL 750.535(3)(a), and the trial court sentenced him as a fourth-offense habitual offender, MCL 769.12, to serve 46 to 420 months' imprisonment. Defendant subsequently moved for a new trial, arguing that the prosecution committed a *Brady* violation when it failed to disclose Pelletier's prior conviction of tampering with evidence. In the alternative, defendant argued that defense counsel was ineffective for failing

-1-

to investigate and impeach Pelletier with his prior conviction. The trial court denied defendant's motion, concluding that no *Brady* violation occurred. This appeal followed.

## II. *BRADY* VIOLATION

Defendant first argues that the prosecutor violated *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), when the prosecutor failed to disclose that Pelletier had a prior conviction of tampering with evidence, which constituted impeachment evidence under MRE 609(a)(1). We disagree.

## A. STANDARDS OF REVIEW

We review a trial court's decision on a motion for new trial for an abuse of discretion. *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016). A trial court abuses its discretion when it "renders a decision outside the range of principled decisions." *Id*. (quotation marks and citation omitted). "This Court reviews due process claims, such as allegations of a *Brady* violation, de novo." *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016) (quotation marks and citation omitted).

## B. ANALYSIS

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2013) (quotation marks and citation omitted). To establish a *Brady* violation, a defendant has the burden to show: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *Id*. at 155. The prosecution is held responsible for "evidence within its control," regardless of its good or bad faith, including "evidence unknown to the prosecution." *Id*. at 150. "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id*. "To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. (quotation marks and citation omitted). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id*.

With respect to the first *Brady* factor—whether the prosecutor suppressed evidence—defendant contends that the prosecutor was aware that Pelletier had a prior conviction of tampering with evidence because Pelletier was convicted by the same prosecutor's office that charged defendant. In denying defendant's motion for a new trial, the trial court concluded that the prosecutor did not have an affirmative duty to engage in discovery for defendant. The trial court also noted that defendant discovered Pelletier's conviction through a search on the Internet Criminal History Access Tool, which is publicly accessible. The trial court concluded, therefore, that Pelletier's conviction had not been suppressed because defendant had access to the prior conviction. This analysis misconstrues the suppression factor of the *Brady* analysis.

In *People v Lester*, 232 Mich App 262, 281; 591 NW2d 267 (1998), this Court adopted a four-factor test for *Brady* violations, which added a due-diligence requirement on behalf of the defendant, which required that, for a defendant to succeed on a *Brady* violation claim, he must show that he "did not possess the evidence nor could he have obtained it himself with any

-2-

reasonable diligence." In 2014, the Michigan Supreme Court overruled this four-factor test, holding that the due-diligence requirement articulated in *Lester* was contrary to the *Brady* doctrine, which "aimed at defining an important prosecutorial duty" as opposed to serving as a tool to ensure competent defense counsel. *Chenault*, 495 Mich at 155. Rather, "[f]ailures on the part of defense counsel to make use of known and available evidence can instead be evaluated under the Sixth Amendment's guarantee of effective assistance of counsel." *Id*. at 155 n 7. Accordingly, the trial court's holding that defendant failed to establish that the prosecution suppressed the evidence was incorrect. Because Pelletier was convicted by the same prosecutor's office that was charging defendant in this case, the prosecutor knew or had reason to know about Pelletier's prior conviction. Despite this, the prosecutor did not disclose Pelletier's prior conviction to the defense. Therefore, defendant was able to satisfy the first *Brady* factor that the prosecutor suppressed the evidence.

Even if the fact of Pelletier's conviction was favorable to defendant, he cannot show that such evidence was material. See *Chenault*, 495 Mich at 155. Defense counsel was able to, and did, impeach Pelletier's credibility at trial through other means, such as the terms of his plea agreement and the inconsistencies between his testimony at trial and his prior statements to police. Furthermore, there was sufficient evidence outside of Pelletier's "unimpeached" testimony for the jury to find that the prosecution proved the elements of the charged offense beyond a reasonable doubt. Although Pelletier's testimony certainly helped establish that defendant knew the property was stolen, there was sufficient other evidence to prove that fact. Accordingly, the trial court did not abuse its discretion when it denied defendant's motion for a new trial on the basis of a *Brady* violation.

## III. JUDICIAL PARTIALITY

Defendant next argues that the trial court's biased statement in front of the jury painted an image of partiality against defendant that violated his right to a fair trial. We disagree.

## A. STANDARDS OF REVIEW

"The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). However, because defendant failed to preserve this issue for appellate review by raising it before the trial court, *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011), we review the issue "for plain error affecting . . . defendant's substantial rights," *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012). To demonstrate plain error the defendant must show: "(1) there was an error, (2) the error was clear or obvious, and (3) the error prejudiced the defendant." *Id*. at 78-79. The defendant is prejudiced if "the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

## B. ANALYSIS

The conduct of the trial court "deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality." *Stevens*, 498 Mich at 164. The trial court's "conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by

creating the appearance of advocacy or partiality against a party." *Id*. In evaluating the totality of the circumstances, the Court looks to a number of factors, including:

> [(1)] the nature of the trial judge's conduct, [(2)] the tone and demeanor of the judge, [(3)] the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, [(4)] the extent to which the judge's conduct was directed at one side more than the other, and [(5)] the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. [*Id*.]

"A single inappropriate act does not necessarily give the appearance of advocacy or partiality, but a single instance of misconduct may be so egregious that it pierces the veil of impartiality." *Id*. at 171.

Defendant argues that the trial court pierced the veil of judicial impartiality when, at the beginning of trial, it stated to the jury:

> I apologize for our late start. Our defendant, Mr. Carlson, was 40 minutes late this morning, so. Thank you, [defense counsel], and [the prosecution], and the Officer. They were all here on time. And thank you, ladies and gentlemen. You were all here on time, so. Again, I apologize for the late start. I'll try to take measures to ensure that that doesn't happen again.

Defendant's argument that the court's statement deprived him of a fair trial borders on frivolous. Although the challenged statement by the trial court arguably established an appearance of frustration toward defendant for being late, this statement was not so egregious that it pierced the veil of impartiality. There is nothing in the "very nature of the words used by the judge" to indicate a tone or demeanor that demonstrated partiality by the trial court. See *Stevens*, 498 Mich at 176. The court merely remarked that defendant was late and the court apologized for the "late start." Moreover, there was no "imbalance . . . with respect to either the frequency of the intervention or the manner of the conduct." *Id*. at 177. Indeed, the second day of trial also experienced a delayed start, and the trial court informed the jury that the delay was caused by the prosecutor. Lastly, although the trial court offered to give a curative instruction to the jury, see *id*., none was given because *defense counsel did not request one*. Therefore, defendant cannot establish plain error and is not entitled to relief on this issue.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that defense counsel's failure to object to these alleged errors constituted ineffective assistance of counsel. We disagree.

## A. STANDARDS OF REVIEW

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *LeBlanc*, 465 Mich at 579. "This Court reviews a trial court's factual findings for clear error and reviews de novo questions of constitutional law." *People v Dendel*, 481 Mich 114, 124; 748 NW2d 859 (2008), amended by 481 Mich 1201 (2008). "The trial court's findings are clearly erroneous if, after we have reviewed the entire record, we are definitely and

firmly convinced that it made a mistake." *People v Johnson*, 342 Mich App 90, 93-94; 992 NW2d 668 (2022).

## B. ANALYSIS

To succeed on a claim of ineffective assistance of counsel, defendant must show "(1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). "[T]o demonstrate that counsel's performance was deficient, the defendant must show that it fell below an objective standard of reasonableness under prevailing professional norms." *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003). To establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Randolph*, 502 Mich at 9 (quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quotation marks and citation omitted).

As to defendant's *Brady* violation claim, although the prosecutor did not disclose evidence of Pelletier's prior conviction, the conviction was not material. With respect to defendant's judicial partiality claim, because the challenged statement made by the trial court was not improper, defendant cannot establish that defense counsel's performance was deficient. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Accordingly, defendant is not entitled to a new trial on the basis of ineffective assistance of counsel.

## V. PROPORTIONALITY OF SENTENCE

Lastly, defendant argues that his sentence of 46 to 420 months' imprisonment violates the principle of proportionality and is unreasonable. We disagree.

## A. STANDARDS OF REVIEW

This Court reviews "all sentences for reasonableness," including those that fall within a defendant's minimum sentencing guidelines range. *People v Posey*, 512 Mich 317, 352; 1 NW3d 101 (2023). "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). A trial court abuses its discretion when its decision is "outside the range of principled outcomes." *Dimambro*, 318 Mich App at 212 (quotation marks and citation omitted).

## B. ANALYSIS

Although the statutory minimum sentencing guidelines are advisory and not mandatory, the guidelines "remain a highly relevant consideration in a trial court's exercise of sentencing discretion." *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015). To determine if a sentence imposed is proportionate, a trial court may consider:

(1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Walden*, 319 Mich App 344, 352-353; 901 NW2d 142 (2017).]

In making a proportionality determination, a trial court must "justify the sentence imposed in order to facilitate appellate review." *Lockridge*, 498 Mich at 392. "This includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Smith*, 482 Mich 292, 311; 754 NW2d 284 (2008). The *Milbourn* Court explained:

When the legislative scheme for criminal sentencing is viewed across the spectrum of crimes from misdemeanor traffic violations to cold-blooded murders, two aspects are immediately clear. First, the Legislature has endeavored to provide the most severe punishments for those who commit the most serious crimes. The crime of murder, for example, is punishable by a longer term than is the lesser included crime of assault. Second, offenders with prior criminal records are likewise subject to harsher punishment than those with no prior convictions, as reflected in the general and specific habitual offender provisions of the penal statutes. These two elements combine to form what might be called the "principle of proportionality." [*Milbourn*, 435 Mich at 650.]

Defendant argues that the trial court failed to tailor his sentence to the particular circumstances under which he was convicted. Although the trial court did state that, generally, the purpose of defendant's sentence was for "punishment, protection of the community, deterrence, reformations [sic], and restitution," the court also noted that defendant was a 48-year-old who had been committing crimes in the community for 27 years, had been in and out of jail and prison during that time, and that the community needed to be protected specifically from defendant's continued criminal behavior. Therefore, contrary to defendant's argument on appeal, the trial court did tailor the sentence it imposed to defendant and the offense for which he was convicted.

Moreover, "the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). "An appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). Defendant's criminal record shows that, at the time of sentencing, he had five prior felony convictions and 21 prior misdemeanor convictions. Defendant's continuous pattern of committing these offenses exhibited a low potential for rehabilitation and a high risk of recidivism. Therefore, the trial court did not abuse

its discretion when it considered defendant's criminal history when imposing his sentence. See *Walden*, 319 Mich App at 353.[1]

Affirmed.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ Philip P. Mariani

---

[1] Defendant also contends that the cumulative effect of these alleged errors raised on appeal denied defendant of his right to a fair trial. This Court reviews the cumulative effect of alleged errors "to determine if the combination of alleged errors denied defendant a fair trial." *People v Knapp*, 244 Mich App 361, 387; 624 NW2d 227 (2001). However, "[a]bsent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). Thus, because defendant failed to establish any error, he has not established a cumulative effect of errors requiring reversal.